We'll hear argument next in Case 17-1268, Opati v. Republic of Sudan. Mr. McGill? Mr. Chief Justice, and may it please the Court. Sudan provided al-Qaeda with a safe haven and vital material support, enabling it to carry out the embassy bombings, killing 224 people and wounding thousands more. In retaliation, President Clinton sent 13 cruise missiles into Khartoum. But to impose punitive damages, Sudan argues, somehow would violate principles of fundamental fairness embodied in the Landgraf presumption. If fairness is the issue here, then Sudan surely should lose. The State Department had designated Sudan as a state sponsor of terrorism in 1993, but Sudan continued to shelter Osama bin Laden, even as he issued fatwas calling for attacks on U.S. interests. In 1996, Congress enacted the Flato Amendment, which explicitly provided for punitive damages for acts of state-sponsored terrorism. But still, Sudan continued to harbor al-Qaeda. Sudan had ample opportunity to conform its primary conduct to U.S. law. It just chose not to. And that's not particularly surprising, because Sudan is a foreign government, and foreign governments generally are not guided in their policymaking by changes to U.S. law. The central rationale underpinning the Landgraf presumption simply is not applicable where the legislation is directed at foreign governments. But ultimately, this Court need not decide here whether Landgraf or Altman applies, because the first step in the analysis is to determine whether Congress has clearly defined the statute's temporal reach. And here, it is abundantly clear that Congress intended punitive damages be available in two carefully defined categories of cases involving past acts of terrorism. In the subsection entitled Application to Pending Cases, Congress set forth two categories of cases, prior actions and related actions, each of which were unmistakably directed at past acts of terrorism. Then, the amendments say in section 1083C1, the amendments made by this section shall apply to any claim arising under section 1605A. Congress had said prior actions and related actions could file under this new 1605A, and now Congress is saying the amendments made by this section shall apply to any of those claims. And Sudan concedes at page 43 of its brief that that meant all of the amendments in section 1983 apply to a claim arising under section 1605A. That language, shall apply to any claim, is virtually identical to the language in footnote 8 of Landgraf, shall apply to all proceedings that Landgraf described as an unambiguous directive and that the Court later in Martin v. Hadix described as unambiguously addressing the temporal reach of the statute. So the case involving private, a private defendant rather than a sovereign nation, are there constitutional limits on Congress's ability to make punitive damages retroactive? Yes. I think under this Court's decision, at least in BMW v. Gore, the due process cause imports some idea of fair notice that would be applicable to persons. But foreign states are not persons within the meaning of the due process cause, just as States of the Union are not. So if we just apply the Landgraf test, what would be wrong with saying if Congress wants to make punitive damages retroactive, it has to say so expressly? There is a magic words requirement. That would be inconsistent with how the Court looked at it in Landgraf. The language in footnote 8 of Landgraf just roped together compensatory and punitive damages. It actually didn't even reference either specifically. It just said section 8 shall apply to all proceedings pending on the date of enactment. And section 8 provided for compensatory damages and punitive damages. There was no magic words requirement applicable in Landgraf. And this Court recognized, but not only in Landgraf, but later in Martin v. Haydix, that that was sufficient to unambiguously address the temporal reach of the statute. Ginsburg. Is Sudan simply wrong when it tells us, as it did in its brief, that the Court has never permitted retroactive application of a statutory authorization of punitive damages in any context? I'm not aware that Sudan is wrong as to what it said. But the Court was very clear in Landgraf that if the 1990 bill had been enacted, that would have been sufficient. And that bill is no more or less clear than section 1983C as enacted by Congress in 2008. It says the language is almost exactly the same, shall apply to all proceedings versus shall apply to any claim. And Sudan concedes, it's important to note, that every single word of section 1083 applies retroactively except the two words punitive damages. There's no application of the Landgraf presumption that works in that way. There's no textual basis for extracting punitive damages from the rest of section 1083. Mr. McKeon, is it really right that all the rest of it does apply retroactively? And I mean that in the sense that under the old statutory scheme, 1605A7, wouldn't a person have been able to get compensatory damages and all the other damages anyway, so that the only new thing that was added by way of this creation of a cause of action is the punitive damages? So I guess that would be a reason to think of the punitives separate and apart from all the rest as retroactive. No, it's not correct, Justice Kagan, because as part of the rationale for Congress enacting a Federal cause of action was that the court in the Peterson case involving the 1983 Marine Corps barracks bombing, it held that persons, family members proceeding under Pennsylvania law and Louisiana law had no remedy because the State law didn't permit for intentional infliction of emotional distress for persons not present at the scene of the bombing. So Congress enacted in the Federal cause of action, it created a remedy that did not otherwise exist for compensatory damages in that limited instance, at least. I would point to this. Well, I guess, I mean, it definitely created, maybe I'm not understanding the answer, it definitely created a cause of action. But in what circumstances is that cause of action different, putting aside punitive damages, than the State law claims that would have been brought? A family member who was in Pennsylvania, who lived in Pennsylvania, for instance, had no claim for compensatory damages. Because? By dint of Pennsylvania State law. That Pennsylvania State tort law did not allow that person to recover. Same for Louisiana. And this was, you know, Judge Lamberth in the Peterson case expressed some regret about this. Got it. So that was part of the rationale for the Federal cause of action. There are at least two other points that I think demonstrate Congress's clear intent that punitive damages apply retroactively. First is the prior actions provision, which for qualifying cases provided not only that an action could be restored under the new section 1605A, but also that the judgment itself shall be given effect as if it had been originally filed under 1605AC. And prior to 2004, many courts in D.C. had awarded punitive damages in cases under the Plato Amendment. One of those cases was a case called Acree v. Iraq that this Court addressed in Iraq v. Beatty. It was a $959 million judgment. That included $300 million of punitive damages. And then President Bush's veto statement, which you can find at the blue brief at 17A, complains that the legislation that Congress had enacted would revive a $959 million judgment against Iraq for the misdeeds of Saddam Hussein. That is an unmistakable reference to the Acree decision. And what Congress did in response was not change anything with respect to the retroactivity of the cause of action or retroactivity generally or to punitive damages specifically. It instead gave the President waiver authority solely with respect to Iraq. It demonstrates that the President knew that this statute provided for punitive damages to apply retroactively. And Congress's reaction to that was to say, yes, we want punitive damages here to apply retroactively. An additional point I would make that's related is that under the Plato Amendment, ever since its enactment in 1996, it had always been applied to allow for punitive damages for past acts of terrorism, including in the case involving Elisa Plato herself. There is just no reason to think that Congress in 2008 wanted to narrow the relief that had been available under the Plato Amendment. This was instead, if you look at the history of how Congress has dealt with the terrorism exception going back to 1996, it is consistently an effort to expand, not always perfectly effective effort, but it's an effort to expand the relief available to victims of terrorism. There's no reason to think that after enacting the Plato Amendment and providing punitive damages that looked backwards, that now Congress would provide a different punitive damages remedy that looked only forward. It also, of course, would ignore the acts of terrorism that were most in Congress's mind at the time, which included, of course, this bombing here. One additional point I could make that further demonstrates that this would apply retroactively is the operation of the related actions provision. And as the D.C. Circuit recognized in an opinion by then-Judge Kavanaugh, that related actions provision allows a person who already has a judgment for compensatory damages to file a new action under the new Federal cause of action to seek punitive damages. The only reason Congress would allow somebody to bring a second cause of action arising out of the same act of terrorism would be to allow that person to provide to get the punitive damages that Congress once again was attempting to provide. So we have the text of the statute, the history of the statute, and the context in which it arose all here together work together to persuasively demonstrate that Congress wanted punitive damages to apply to past acts of terrorism. Sudan, again, concedes that the Federal cause of action for money damages applies retroactively. They concede that the Federal cause of action for salatium, for pain and suffering and economic damages all apply retroactively. This is just the side of the issue here, but I have not seen the term salatium as an item of damages before. Where does that come from? I don't know where it comes from originally, but I think it refers to the emotional suffering of an aggrieved family member who is not themselves directly the injury that, for instance, a spouse suffers from viewing their spouse or their other family member suffering through an injury. What about the retroactivity of punitive damages under State law? So I think there, if the Court agrees with me that the Federal remedy, that the punitive damages applies retroactively under the Federal cause of action, then the State law cause, then it applies. The D.C. Circuit's decision with respect to the State law cause of action really collapses. The D.C. Circuit's primary rationale was that it would be inconsistent to allow State law punitive damages and not, if you had already decided that Federal law doesn't provide for punitive damages, and it was that, what it said, inconsistent outcomes at page 129 of the Petition Appendix that really drove the decision. Two additional points I would make is, first, the D.C. Circuit recognized that without the Landgraf presumption, then the amendment would have lifted the restriction as to State law punitive damages. So if you agree with us and the government that Altman is the right framework as to which to look at the State law issue, then under the D.C. Circuit's own rationale, the State law punitive damages should apply. And I guess the third point I would make is that once you acknowledge and concede that these State law claims are brought under Section 1605 capital A, and it should be emphasized that Petitioner's claims here have only ever been claims under Section 1605A. They all were filed after the enactment of this statute originally. So once you concede that the actions are under 1605A, Section 1606 has no application to them, the 1606 bar on punitive damages, as the D.C. Circuit says, at 128A of the Petition Appendix. It has 1606, therefore, has no bearing upon State law claims brought under the jurisdictional grant in Section 1605A. That is us. That is our claims. And if there – without Section 1606, there is no other textual basis to bar punitive damages of a State law claim. There is no free-floating preemption of State law punitive damages that could be invoked. So I think that if you agree with us about the Federal law cause of action, then the State law cause of action goes with it. If there are no further questions. Roberts. Thank you, counsel. Ms. Ross. Mr. Chief Justice, and may it please the Court. If I could start this morning with Justice Alito's question about a magic words requirement. We, of course, agree with Petitioners that Landgraf doesn't require that. And I think it's very important on page 272 of Landgraf where the Court explains exactly what it is doing. It states that requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. I think that that is exactly what happened here for all of the reasons that Mr. McGill has already explained. We have a statute where Congress in the first instance says under 1605, big A, small C, that punitive damages will be available in a laundry list of damages that it specifically identifies. It then goes in section 1083C, and this is on page 26A of our appendix, through the actions that will be brought under 1605, big A. It explains that the amendments to section 1605, big A, will apply in any action. And it provides for prior actions that are related to previously filed actions, so actions that are necessarily dependent on pre-enactment conduct to be brought directly under section 1605A. If Landgraf is — if Landgraf is a sort of substantive interpretive canon that is based on constitutional concern, why would it apply at all in a case involving a foreign sovereign? And if it's not such a substantive canon, it would have to be an interpretive canon that Congress generally doesn't want to impose liability retroactively on a foreign state. Would there be any basis for that? So I think it is a canon of congressional intent. I don't know that it's as closely tied to or limited to constitutional concern, so much as simply a concern that when, generally, when Congress acts in a substantive manner, we think that it does so prospectively. And I think if you thought that it simply had no application to foreign sovereigns, I think Altman would have been written very differently. I think page 695 and footnote 15 of Altman make very clear that the Court, while considering Landgraf not particularly appropriate in the context of foreign sovereign immunity and related issues that were then part of the FSIA, very clearly and self-consciously carved out situations in which you are imposing new liability for the first time. And this actually takes me to Justice Kagan's question, which I also was hoping to address. The — it is true, as Mr. McGill points out, that the compensatory damages were not available for all victims under prior law. I think it's also important to note that I don't read Landgraf as asking necessarily whether any other source of law would have provided for that same set of damages. I read it as asking whether this Federal cause of action in that case and — and here would provide for that type of liability. And I think that's important, because you can imagine, in a case — particularly in a case involving a foreign sovereign, where you would then have to do that analysis across many, many different types or bodies of law across different countries, as well as in the State and the — the Federal context. It's also not clear to me, and this goes, I think, to Justice Ginsburg's question, whether types of damages that are specifically enumerated in 1605, A little c, like salatium, necessarily would have been available under State law previously. And so no one has sort of done that analysis, and I don't think that's necessarily the right way to think about the question here. I think the — the back and forth between Congress and the President that Mr. McGill mentioned earlier is extremely important here for two reasons. One, of course, is that, as Mr. McGill noted, it's very, very similar — the language here is very similar to the prior bill that Landgraf had discussed. And so I think we can sort of take note of that. Obviously, Landgraf also, by looking at that prior bill and the veto of that prior bill, sort of provides a guidepost that that is the correct type of history to look at in this clear statement inquiry. Sotomayor. Ms. Ross, I'm trying to process everything you've just said. Sorry. But let me break it down in a more direct way. Sure. Your colleague said that we don't have to get into the Landgraf-Altman issue, that we can just see the plain language of the statute and say, whatever, however we look at it through the Landgraf lens or the Altman lens, Congress was clear. Punitive damages apply retroactively in this case. Do you agree with that proposition? I do, Your Honor, with respect to the Federal cause of action. All right. Now we go back to what Justice Alito asked you, and I want to clarify what you think the answer is to this. Assuming it was a little less clear, are you saying Altman – Altman would say that there is no presumption in a case involving foreign sovereigns, that Landgraf is only a presumption that applies to private rights, not to actions against foreign sovereigns? No, Your Honor. We think that Landgraf would apply. We just simply think that it is satisfied here. And again, I apologize if I was wrong. I'm sorry. I know your adversary takes a different tack, so I wasn't sure. Okay. Correct. Petitioners think that you can apply Altman across the board. We do think that Landgraf is the right framework for the Federal cause of action, although we think Altman is the correct one. You don't believe that it's only to private rights. You believe it's to any retroactivity questions. Well, no. I mean, of course, we would carve out Altman itself, which was a retroactivity question. But on immunity. But on immunity. Exactly, Your Honor. And we think that that's why Altman, in fact, applies to the State law claims, because all Congress did with respect to the State law claims was adjust the extent to which United States courts are open to plaintiffs with preexisting claims. That's the language that Congress used essentially to describe the then current State of the FSIA in 2004, and we think it's still true with respect to the State law claims today, because plaintiffs would be proceeding, obviously, under State law. And so Section 1605, big A, little a, which is the exception to foreign sovereign immunity, and Section 1606, which is the provision that previously barred punitive damages, neither of those create liability for punitive damages in the first instance. Again, they simply alter the extent to which plaintiffs who otherwise could obtain that remedy in under State causes of action can do so in Federal and State courts following the 2008 amendments. If Congress thought that a particular country was an incorrigible sponsor of terrorism and it wanted to punish that country, would there be any constitutional barrier to Congress simply expropriating all assets of that country within the reach of the United States? Your Honor, the United States hasn't taken a position on the scope of a foreign State's constitutional rights in this case. Sudan hasn't raised that issue. Sudan has asked, like any other litigant, for application of the Landgraf presumption. It has not suggested that there would be some particular constitutional violation as to it. I think particularly in this context, where we have a narrow provision focused on State sponsors of terrorism that have been designated as such based on a congressional – several congressional statutes that permit that designation, and then an executive determination about their sponsorship of terrorism, there really aren't any constitutional issues in this case. Alito Do you think the Landgraf applies in exactly the same way to a claim by when the defendant is a foreign State as it does when the defendant is a private party? I think that, again, we haven't had a need to address that here, because I think it's clear, I think, for the textual and contextual reasons that have already been discussed this morning, Congress was exceptionally clear. I also think that that is – the notion that it would apply in the same way, or at least that it does apply to this very narrow circumstance of the creation of a new cause of action against a foreign State, is a pretty clear sort of lesson from Altman itself. And again, Altman having been very clear to carve out the situation in which a new cause of action is created, obviously there it was thinking about foreign sovereigns more generally. I mean, it's the idea that if a foreign State is going to sponsor terrorism, it might think, well, you know, if we're going to be liable for compensatory damages, it's worth our while, but if we're going to get hit with punitive damages, well, that's going to stop us. Is that the thinking of the U.S. government? I don't think that that's the thinking of the U.S. government, Justice Alito. I think what is the thinking of the U.S. government is twofold. One is that Landgraf, I think, doesn't just apply in situations, and some of the subsequent decisions actually make this clear, doesn't just apply in situations where someone is sort of consciously thinking, should I take this act or shouldn't I? It embodies a more baseline fairness expectation, an expectation simply about how we think Congress thinks about these issues. We generally think that when Congress legislates, it does so prospectively, and so if it's going to do so in a way that really affects substantive liabilities, it should be clear. And we think, again, here, it was quite clear, and we think that that's enough to resolve this case on, as I said, on the Federal cause of action and then on the State cause of action. We think that clearly falls under Altman, and for the reasons provided, we think satisfies that more lenient test. If the Court has no further questions, we would ask that you reverse. Thank you, counsel. Mr. Curran. Mr. Chief Justice, and may it please the Court, first a response to my friend Mr. McGill's opening histrionics. I note that the D.C. Circuit concluded that the evidence at the default hearing failed to show that Sudan either specifically intended or directly advanced the 1998 embassy bombings. The D.C. Circuit also acknowledged that Sudan expelled bin Laden permanently in 1996, May of 1996, two years before the U.S. designated bin Laden and al-Qaeda as terrorists. So I think that some of Mr. McGill's comments have some selective 2020 hindsight aspect to them. Is that before us? I'm just responding to the argument that Sudan is the devil incarnate here. I think instead the record shows that Sudan at most was negligent in controlling people within its borders. And that it's not, and I want to make it clear that Sudan did not and is not accused of being a terrorist, but instead providing an environment that allowed terrorism to foster. Again, long before bin Laden was a notorious terrorist. Now before I turn to the retroactivity issues that are before the Court, Justice Ginsburg, one comment about the state law claims that Justice Alito raised. The state law claims are all brought by foreign national family members. So that's citizens of Kenya and Tanzania. They're all for claims of emotional distress felt by those plaintiffs. These are not representative claims of any kind. Now those claimants acknowledge, they concede, that they are not eligible for the cause of action under 1605 capital AC because they don't have the sufficient U.S. nexus. They're not U.S. nationals, they're not U.S. employees, they're not U.S. contractors, and they're not representatives of those. But their decedents were. But their decedents were. But these are not claims on behalf of the decedents. These are claims for the emotional injuries of these foreign family members themselves. So if they're not eligible under 1605 capital AC, the cause of action, they're also not eligible under the exception to immunity because that's got parallel, almost identical, U.S. nexus requirements. The bottom line is there's no subject matter jurisdiction as to claims by foreign national family members seeking redress for their own emotional injuries. So if the court were to expand the question presented, as my friends suggest, the conclusion should be that those state law claims cannot withstand scrutiny under subject matter jurisdiction. Now turning to the key retroactivity point. Here our position, of course, is Landgraf controls this case. Altman is not on point because when Altman was decided, the FSIA was strictly a jurisdictional statute, essentially. I do know it was complicated by the Verlinden decision, which said it established some substantive aspects of federal common law. But in any event, Altman was limited to the FSIA as it existed at the time, and that was pre-2008. Footnote 15 of Altman and the text accompanying that specifically say that we're not dealing here in Altman with a cause of action, the creation of a cause of action or the modification of a cause of action, because if we were, we'd have to be concerned with Landgraf and Landgraf's progeny, including the Hughes case. Kagan. Well, Mr. Curran, assuming Landgraf controls, why isn't it met here? I mean, you've conceded that every other part of this statute applies retroactively, so how is it that you can exempt punitive damages from that retroactive coverage? Okay. There's a lot to that question, and I have an answer for all of it. First, with respect to your earlier point, yeah, we do concede that the compensatory damages and other – certain other aspects of relief, including salation, those do apply retroactively, but not because there's a clear statement by Congress that those should apply retroactively. It's because there was no change, no substantial change. The foreign States were already subject to compensatory damages and salation. Well, Mr. McGill said sometimes there was, and it would be a matter of State law. You would have to go State by State and see what a particular State law had allowed and what it didn't, and that couldn't be what Congress had in mind, is I think Mr. McGill's and Ms. Ross's argument. Right. So Mr. McGill identified two States, Louisiana and Pennsylvania, that don't provide for IIED claims, emotional distress claims for non-present family members. Okay. So those are two outlier States. I'm not aware that we've got any plaintiffs in this case from Pennsylvania or Louisiana. And furthermore, that's secondary. Our position is that family members don't have a claim at all before or after the 2008 amendments. But, Mr. Curran, just to try and pursue this question a little bit further, I thought you had conceded as well that 1605a's cause of action applies retroactively, the Federal cause of action. Yes. Yes. Because That's a new cause of action degree, right? Well, it's new as a matter of Federal law. Right. Well, that's how we usually define causes of action is, you know, is there a source of law that provides it. Okay. Okay. But there's a point. There's a point. May I finish, please? I'm sorry. That's all right. So, and this is just the heart of the matter. And so take your time with it. There's no rush. But I think this is the heart of the matter for me, and it sounds like it may be for some of my colleagues. If we agree that the cause of action is a new one and applies retroactively, and if we agree that compensatory damages apply retroactively, on what account does it make sense to speak of punitive damages not also applying retroactively given that it's authorized by the same statute? Yeah. The answer to that lies in this Court's analysis of the Bradley case within Landau Landgraf and within Altman. Okay. Bradley was a case where there were, there was an entitlement to attorney's fees under common law. And then a statute was passed authorizing attorney's fees. And the question was, well, should that new statute apply retroactively or not? No clear statement by Congress, but different regimes. And the Court concluded, this Court concluded that we're going to apply the statute retroactively because there's not really a retroactive effect for the passage of that statute, because attorney's fees were already available under common law. All right. Let's say I don't buy that argument. And the mere fact that there were State causes of action doesn't move me very much. And I'm still here, though, on a record in which everyone agrees that the Federal cause of action does apply retroactively. Then what do I do? Well, I might change my concession as to the Federal cause of action if the State the prior State cause of action was irrelevant. Can we do that at this stage, Mr. Curran? Well, I don't know. But under, and I don't know if this is directly responsive to your question, but there's no clear statement here as to retroactive effect of any of this stuff in 2008. So my friends point to 1083C and its provisions on pending cases. Well, this is an important point to make. None of the cases we're talking about here today were pending at the time the 2008 statute was enacted. As we say on page 13 of our brief, three of the cases were filed in 2008 after the 2008 enactment. And the fourth case, the Olpate case, which we refer to on page 14 of our brief, was filed in 2012. So none of the cases at issue in this case were pending cases. So I submit. Ginsburg. I thought it was a given that you were contesting the retroactivity only of punitive damages, not the basic cause of action, not the compensatory damages. Not pain and suffering. Not salatium. And now you seem to be waffling or reneging on that concession. No. So here's my analysis, right? Landgraf first asks, did Congress specify clearly whether there's retroactive effect or not? If Congress has said so, we apply that. But if Congress hasn't said so, then the next step in the Landgraf analysis is, well, we have to take a look and see whether this new provision has a retroactive operation. Does it upset settled expectations? Does it impose new damages? Does it impose a disability, to use Justice Story's terminology? And with respect to compensatory damages and with respect to the cause of action, with all due respect to Justice Gorsuch's disagreement on this point, those things existed before the 2008 enactment. Well, we often say there's a state cause of action. That doesn't necessarily mean there's a Federal civil rights cause of action, right? True. But here there's no space between. So, hey, Federal law can provide the exact same remedy that State law can. That doesn't mean there's the same cause of action, does it? Well, I think under Landgraf and under Bradley, what we look for is the practical consequences. Is there fundamental unfairness in applying retroactively the new provision? And here there's not as to compensatory damages and the cause of action. I don't know where your argument based on these State claims is going. Suppose that there was no Federal cause of action for something, but there was a State cause of action for exactly the same thing. And so now Congress passes a statute that creates the Federal cause of action, which is exactly parallel to the preexisting State cause of action, but says nothing whatsoever about retroactivity. Would you say that there is no retroactive effect in the case of the Federal statute because you were already liable under the State law? That's exactly what I'm saying. Yes. There's no way. I think you're arguing it in exactly the opposite direction. So you would say there's no retroactive effect under the State, under the Federal we would presume that there would be no retroactive application, that there would be no problem with retroactive application of the Federal claim because you were already liable under the State law. Right. That's the proper application of Landgraf. Under Landgraf, the presumption against retroactivity doesn't kick in unless the new statute has a retroactive effect, that it has to operate retroactively. There has to be prejudice to the subject of the statute before the presumption kicks in. Well, what does that mean we have to do? Suppose you're right. Suppose you're right. I mean, we take all this. You say, look, go read 16.0 whatever it is, C. 2. And it says, With respect to any action that was brought under 16.05a.7, on motion, the judge shall, it's treated, it shall be given effect as if the action had originally been filed under 16.05a.C. Now, when you look at what the effect as if it had been brought under 16.05a.C., we get all these things like economic damages, da, da, da, da, and punitive damages. All right. So I'll make every assumption you want. The assumption is that all those things except for the word punitive damages were already part of what the defendants were facing. The only new one is punitive damages. So we're talking about a retroactive effect of the two words in this statute which, called punitive damages, which didn't face the plaintiffs, the defendant before. All right. Fine. Now, if that's so, why isn't it still clear? Well, there's no reference to punitive. You, you, you, you summarize accurately 1083C.2. Mm-hmm. There's no reference there to punitive damages. There's no reference to the retroactivity. No. All there is is the word as if. Right. And it says as if the action had originally been filed under 1605A.C. Okay. So if it had been originally filed under 1605A.C., you would have, when you're looking to the dam, what damages shall I give, said the judge? Well, read the words. Economic, so the atom paints up, and punitive damages. This Court's decisions, Landgraf and the progeny, they all say that there has to be a clear statement of retroactivity. Well, why isn't this clear? It's clear because it says as if. It's like if Socrates is a man, you know, what is that? All men are mortal. If Socrates is a man, Socrates is mortal. It says all actions brought under 1605A.C. It shall be treated as if it is 1605A.C. And to treat it under 1605A.C., you give punitive damages. Right. So again. Maybe Socrates wasn't mortal, but I thought he was. Well, 1083C.2 applies only to pending cases. And it provides that by motion, a party in a pending case, a plaintiff in a pending case can therefore basically transition its action from the prior version, which is 1605A.7, to the new Federal cause of action. So it's a transition. It says nothing about punitive damages being applied. It says nothing about retroactivity. It just says as if. I mean, I don't want to repeat myself. So it's putting that transitioned plaintiff on the same footing as a fresh-filing 1605A person. Yes. That says nothing about whether punitive damages should apply to pre-enactment conduct. And there's something strange about the whole discussion of retroactivity, because the doctrine is supposed to be based on people having an opportunity to know what the law is and conform their conduct to it. Are you maintaining that Sudan might have withheld their aid to al-Qaeda just to prevent exposure to punitive damages? This Court's cases are pretty clear, saying that even as to conduct that was illegal or immoral, the bad man under, to use Justice Holmes' terminology, is still entitled to notice of what the law is. Maybe a country in the position of a Sudan, knowing about the extra liability for punitive damages, maybe they would have supervised their residents, their 40 million residents, a little more closely. But the law does presume that, particularly in the case of punitive damages, that it's only fair to apply them if the party was on notice of its exposure to that at the time of the relevant conduct. This is like a due process argument. And I guess if corporations are persons, maybe foreign countries are, too. I don't know the answer to that. But that is what's in front of us, is it? And as far as the words pending cases are concerned, do you fall with the, are you a pending case? Pardon me? Are these pending cases in your view? None of them are. Not pending cases? Right. None of them are. This is with respect to any action that was brought under 1605, small a, 7. Yours was brought under 1605. No. It wasn't? What was it brought under? They were all brought after the enactment in 2008. So they were all brought under 1605, capital A. Page 13 of our brief, every one of these actions was filed after the enactment in 2008. None were pending at the time of the enactment. This section 1083C that we're all talking about is irrelevant to these cases. They're looking in the wrong place. Let me see if I have this right. Your argument is that 1605, this section is really about 1605, small a, 7. Yes. And your cases are big A. Yes. And there's nothing. You can look throughout all of the 2008 enactment. You will not see a whisper of a suggestion about the temporal application of claims under 1605, capital A. They don't exist. That's why my friends are resorting to the pending action transition provisions, which are irrelevant to what we're talking about. But wouldn't that be a little weird? In other words, you brought it under 1605, capital A, before what's called the plateau amendment. Is this the one? No, it's all after plateau. You're saying it's under big A, and this latter thing, application of pending cases, is only small a. Right. So if, in fact, you filed a case in 1899, and it's still pending, it's true in some courts, the — and you then — you wouldn't — you would have punitive damages applied to that. No. But if you filed it — No. It still doesn't mention punitive damages. It still doesn't talk about retroactivity. Landgraf sets a bar. And it's not just Landgraf. It's all the cases after it. It's Lind, it's St. Cyr. All of these cases say, if you're going to apply punishment or significant increased damages retroactively, Congress, you've got to say it pretty clearly. You've got to say, as to the new punitive damages, those apply retroactively to pre-enactment conduct. It's not that hard to say. Congress can say it. Nothing short of referring explicitly to punitive damages would be sufficient. I think that's right. Well, I think that's what explicit means, and that's what express means in the Landgraf decision. Words like express and explicit are all over Landgraf. Now, I do acknowledge that in that footnote 8, where Justice Stevens was — for the Court, was writing about the 1990 Civil Rights Act, which wasn't passed, he identified that as a better and maybe sufficient way to show retroactive effect. But there, there was a cross-reference specifically to the damages provision. And it said that provision shall apply for cases on or before such-and-such a date. We've — with all due respect to Mr. — my friend, Mr. McGill, there's no close analogy between that provision in footnote 8 of Landgraf and what we're dealing with here. Here, we have literally nothing talking about the retroactive effect of 1605 capital A. Nothing. Mr. Kern, if I could understand your position, are you saying that punitive damages are the only thing that was new, or are you saying — are you conceding that there are some states where other sorts of damages and maybe some other liability rules were new, but that those get kind of swept into the mix and there is retroactive application of those? I'm not aware of any new exposure that 1605 capital A imposed other than punitive damages. Suppose Mr. McGill can tell us we found three states where there's new exposure. What happens to those? If there was no exposure in those states, and then now there is under the new Federal cause of action, I think a foreign sovereign defendant has an argument that that is new, that is a new disability, that is a new punishment, and it shouldn't be applied retroactively without a clear statement by Congress. I think that's under Landgraf. Breyer. But you're saying, I think, look at 1605 large A. Yes. When you look at 1605 large A, it does provide for punitive damages. But it doesn't say whether those punitive damages are retroactive. Correct. Now you look at 16 — then you look at 1605 large A application-dependent cases, and you're saying as to that has nothing to do with this case, because this was not a case that was brought under 1605 small A 7, which it has to do it. Is that right? I'm not sure if I heard you right. It says with respect to any action that was brought under section 1605 small A 7. Yes. And that isn't yours. That isn't ours. So that whole section doesn't apply. Right. When we look at the section that does apply, we see that it doesn't say anything about retroactive. I'll say it again. Is that it? Is that it? Yes. All four of these cases that we're dealing with in this case were filed after the enactment of the statute. None of them were pending. Is that a new argument? I thought you — are you saying that the Federal cause of action does not apply retroactively at all? Under the new Federal cause of action, all you can sue for are things that happen after the enactment of that provision. No. I'm saying that the new Federal cause of action applies retroactively because under Landgraf's second step, it has no practical retroactive operation. And if we disagree with that premise, you lose, right? Because if we think that a Federal cause of action adds in any way a material new potential liability, different statutes of limitations, for example, different elements of the cause of action, whatever. If we disagree with you and we think that a Federal cause of action is separate and distinct from a State cause of action, you lose. No. Why not? How do you prevail then? Because if the Federal cause of action is really a new disability, is really a new prejudice, then it requires an express statement by Congress of retroactivity. And my understanding, though, is you've agreed that the retroactivity here is permissible, but you're saying that that's — maybe I'm missing this. Maybe the missing argument is that your concession is no longer valid at that stage. No. Oh, at that stage. Right. If you change the premises of my concession, yes, my concession changes. But my concession is premised on the very strong reality that the Federal cause of action didn't add much to preexisting State causes of action. Excuse me. Could I just clarify one step further? Please. Let's assume that this had been filed earlier than the amendment, that it was a — that it goes back to — it was timely filed before. Would you concede that 1605, Big A.C., would make punitive damages retroactive as to that class of cases? I would not, and I'll tell you why. All right. That's where now I'm getting lost. I followed you up to saying for new causes of action, it's not clear. If 1083C was relevant because there was a pending case under 1605A7, then I still would say, where is the express or explicit command of retroactivity for punitive damages? And I don't find that in 1083C. You have a stronger argument. I mean, you'd say, look, if we had filed this three years later, the punitive damages part wouldn't apply because this — the as-if thing doesn't apply. And so it can't be clear. It can't be clear to a preceding one, although they refer to as-if. It doesn't make sense to apply retroactivity to the older cases and not to the newer cases. And that itself creates an ambiguity. Saying as-if isn't enough. Saying — That's a pretty — I mean, you have to say something like that. And, boy, we're in outer space, I think, by the — Landgraf tells us the notion of retroactive imposition of punitive damage is such a draconian step. It is against the basic principles going back centuries about fairness. So before we attribute that intention to Congress, we're going to ask Congress to say it pretty damn clearly. That's what it says. So, Mr. Curran, in your state of the world, and if I understand it, it's not just punitive action — punitive damages now. It's really any new liability, any new damages. So you're conceiving of a state of the world where a defendant in a foreign state gets to walk in and say, well, there's this new thing, and that wouldn't have been true before. There's this new thing, and that wouldn't have been true before. And that's what it will all come down to, right? And, boy, that seems awfully complicated and probably not what Congress had in mind, that somebody would say, under Pennsylvania law, it works like this. Under Wisconsin law, it works like this. And then different people would be treated in different ways depending on which state they were in. Could that make any sense? Well, first of all, these principles are just for foreign sovereigns, right? This is for litigation writ large, right? Yeah. And we're not taking a position that, oh, the federal cause of action shouldn't apply retroactively because of people in Pennsylvania. We're not. We're taking a more practical approach to this, that, in general, the federal cause of action adds nothing new. So it has no retroactive operation under Landgraf, therefore it applies retroactively. This is what Landgraf says. So we're not asking for any change of the law. We're asking for equal-handed treatment of Sudan on the same footing that other litigants would enjoy the presumptions and other statements in Landgraf. But we're not asking for anything new or radical here. This case presents a straightforward application of the Landgraf steps. Is there a clear statement by Congress? If not, then we look and see whether there's a retroactive operation. If there is a retroactive operation, such as with punitive damages, then the presumption kicks in and the new provision cannot apply retroactively. That's it. We're not asking for anything radical here. There are other arguments we make in our briefs, including on subject matter jurisdiction. We invite the Court to consider those, including the one that argues that the Helmrich decision of a couple of years ago has not been applied correctly here, because the Court here found that applied a wrong standard for jurisdictional causation. We also take issue with the idea that this case involves an extrajudicial killing, because that's a specific term of art under international law. And we raise a series of other jurisdictional arguments that probably would require remand or further briefing. Ginsburg. I know one is a limitation, statute of limitation question, which is an affirmative defense, not a jurisdictional issue. Well, that's the issue, Justice Ginsburg. The issue is whether the limitations defense is jurisdictional and therefore cannot be waived by a defaulting foreign sovereign, or whether it is an affirmative defense that can be waived. And our position is, given the placement and text of 1605, capital A, B, that it should be interpreted to be jurisdictional, so the court of appeals should have addressed it on the merits. Mr. McGill says that if your interpretation of extrajudicial killing is correct, then the terrorism exception doesn't apply to terrorism. Yes. That's semantics. There's no question that the four predicate acts each constitute types of terrorism. Okay? So it's still the terrorism exception. My question to Mr. McGill, I guess, is how come Congress rejected the act of terrorism as it was proposed in the early versions of the terrorism exception? But which terrorists would be covered under your understanding? Only those who are officially on the payroll of the State? No. No. Agents and others engaging in the act. Well, it may depend on the predicate act, right? There are four predicate acts, two of them, extrajudicial killing and torture, are acts under international law that can only be committed by State actors. The other ones, aircraft sabotage and hostage-taking, under those conventions, anyone, you don't have to be a State actor, but you can be guilty of the violation under international law. So it depends on the predicate act. And the ATA, right, we've got the Anti-Terrorist Act, which does criminalize and provide civil remedies for acts of international terrorism. That accepts foreign States. So when one considers the broad terrorism statutory scheme, one sees that acts of terrorism generally are prohibited and criminalized and provide for civil remedies, but not against a foreign State. But under the four predicate acts that are embedded in the terrorism exception, those are acts that Congress carefully considered with the advice of the State Department and concluded that those acts are all condemned universally by international  Thank you. Roberts. Thank you, counsel. Three minutes, Mr. McGill. McGill. Thank you, Mr. Chief Justice. Justice Breyer, let's start with what this case is. If you turn to 28A of the government's brief, you'll see the provision for related actions. That's what these cases are. A related action is one which is where there is a case that has been timely commenced under the old terrorism exception, 1605A7, and that's the Owens case, filed in 2001. Then any other action, turn the page, arising out of the same act or incident, may be brought under 1605A. That is us. Because we are related to Owens, we arise out of the same act or incident as Owens, we file under 1605A. What happens then? Under 1605A1, I'm sorry, under 1083C1, the amendments made by this section shall apply to any claim arising under section 1605A. The amendments of 1083, therefore, apply to our claims. And at page 43, Sudan concedes that, and I'm reading now, section 1083C1 simply provides that all the amendments under section 1083 apply to a claim arising under section 1605A, all the amendments. That includes punitive damages. Breyer. I think he's saying, look at the first, look at two big A in the application to pending cases. And he's saying with respect to any action that was brought under 1605A7, small A, that's where this retroactive, that's where the thing applies. And he says his, yours isn't. We're not. But you come to the related one. We're not a prior action. We're a related action. But 1605A applies to both. Prior actions is the Acri case. Prior actions are cases that already had punitive damages judgments that Congress said could be revived. Any judgment in the action shall be given effect as if it had been filed under 1605A.C. And it was for that reason that the President first vetoed it, and it was in response to the President's veto that Congress gives waiver authority with respect to Iraq. Mr. McGill, the one argument that they make that I, can we avoid reaching is a subject matter jurisdiction, whether relatives of victims for their independent state tort actions fall within any of these statutes, because they all require a U.S. nexus. Yes. So the argument is that claimant in 1605 cap AA means legal representative. That's their argument. That argument is wrong for several reasons. First, it's contrary to the plain meaning of claimant. Second, claimant or victim was language added in a technical amendment in 1997, and it was consistent. May I? You can get to third. Consistently applied by lower courts for some 12 years, and Congress legislated against that background, ratified that, and I'd cite the Inclusive Communities Project for that. Thank you, counsel. The case is submitted.